UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jyron Mendale Woodard, | Case No. 22-cv-1989 (MJD/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION AND ORDER** |
| Officer Chris Wegner, in his individual and official capacity; Officer Amanda Johnson, in her individual and official capacity; Unknown Officers #1-30, in their individual and official capacity, | |
| Defendants. | |

This matter is before the Court on Defendants Chris Wegner and Amanda Johnson's Motion for Summary Judgment. (Doc. 45.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Defendants' Motion for Summary Judgment be granted and claims against Defendants Chris Wegner and Amanda Johnson be dismissed with prejudice. Additionally, Mr. Woodard has requested that the Court appoint an expert, which the Court denies without prejudice. Finally, the Court orders Mr. Woodard to show cause why Unknown Officer #1-30, who have not been identified or served, should not be dismissed.

## BACKGROUND

On August 10, 2022, Jyron Woodard filed his pro se Complaint under 42 U.S.C. § 1983, against the City of Bloomington Police Department, Officer Chris Wegner, the

City of Richfield Police Department, Officer Amanda Johnson, and Unknown Officers #1-30. (See *generally* Doc. 1.) On February 28, 2023, the District Court dismissed Defendants City of Bloomington Police Department and City of Richfield Police Department "without prejudice to [Mr. Woodard][1] suing the relevant cities themselves." (Doc. 31 at 2.) Mr. Woodard never sued those entities. (*See generally* Docket.) Therefore, the remaining Defendants at the time of this writing are Officer Chris Wegner, Officer Amanda Johnson, and Unknown Officers #1-30.

Mr. Woodard's claims stem from his arrest on February 16, 2022, by City of Bloomington Police Officer Chris Wegner and City of Richfield Police Officer Amanda Johnson.[2] (Doc 1 ¶¶ 17-26, 34.) Mr. Woodard claims that Officers Wegner, Johnson, and unknown officers violated his Fourth and Fourteenth Amendment rights when they used excessive force to restrain him during his arrest. (*Id*. ¶ 18.) Mr. Woodard also raises state-law claims of assault and battery, and intentional infliction of emotional distress arising out of the same incident. (*Id*. ¶¶ 20, 22-26, 30-32.) Additionally, Mr. Woodard raises a "failure to train" claim which the Court construes as a *Monell*[3] claim against the cities of Bloomington and Richfield for allegedly failing to "train its uniformed officers in avoiding the miss-identification [sic] of plain clothes officers in the field." (*Id*. ¶ 34.)

---

[1] On July 11, 2023, Mr. Woodard filed a Motion to Amend Name on Docket to change his name in the case caption from Jyron Mendale Young to Jyron Mendale Woodard. (Doc. 40.) This Court granted Mr. Woodard's motion on July 25, 2023. (Doc. 43.)

[2] Mr. Woodard's interactions with police on February 16, 2022, were also the subject of an unsuccessful suppression motion in his criminal case. *See United States v. Young*, No. 22-cr-79 (NEB/TNL), 2022 WL 17478294, at *1 (D. Minn. Sept. 12, 2022), *R. & R. adopted*, 2022 WL 16849054 (D. Minn. Nov. 10, 2022).

[3] *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

2

In support of their motion for summary judgment, Defendants Wegner and Johnson argue that Mr. Woodard cannot establish any constitutional violations and, even if there were constitutional violations, they would nonetheless be entitled to qualified immunity.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit." *Id.* at 248. And a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When deciding a motion for summary judgment, a court "must view the evidence 'in the light most favorable to the opposing party,'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)), drawing "all justifiable inferences" in the opposing party's favor, *Tolan*, 572 U.S. at 651 (quoting *Anderson*, 477 U.S. at 255) (further citations omitted)). But a court should not accept a party's unsupported allegations that are "contradicted by the record, so that no reasonable jury could believe" them. *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## ANALYSIS

I. **DEFENDANTS WEGNER AND JOHNSON, IN THEIR INDIVIDUAL CAPACITIES, ARE ENTITLED TO SUMMARY JUDGMENT ON MR. WOODARD'S FOURTH AMENDMENT EXCESSIVE FORCE CLAIM.**

The Court first addresses Mr. Woodard's individual capacity claims against Defendants Wegner and Johnson. Mr. Woodard alleges that Defendants used unconstitutionally excessive force against him in violation of the Fourth Amendment during his February 16, 2022 arrest.

Courts analyze excessive force claims under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The question the Court must answer is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Yang v. City of Minneapolis*, 607 F. Supp. 3d 880, 891 (D. Minn. 2022) (citing *Graham*, 490 U.S. at 397). But courts do not examine the facts in a vacuum. Rather, a court "must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[s] or others, and whether the suspect is actively fleeing or resisting arrest." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). Moreover, courts must evaluate the reasonableness of the force used through the lens of a reasonable officer on the scene, "not with the benefit of hindsight." *Kohorst v. Smith,* 968 F.3d 871, 876 (8th Cir. 2020) (citing *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018)). Indeed, a law enforcement officer is "is entitled to use the force necessary to effect an arrest where a suspect 'at least appears to be resisting.'" *Id.* (quoting *Ehlers v. City of Rapid City*, 846

4

F.3d 1002, 1011 (8th Cir. 2017)). Under Eighth Circuit precedent, even passive resistance, such as failing to follow instructions, may justify an officer's use of force to complete an arrest. *Id*. (citing *Ehlers*, 846 F.3d at 1011; *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019)).

In his Complaint, Mr. Woodard claims that Defendants Wegner and Johnson used unconstitutionally excessive force when they saw him "parking his vehicle," and "approached . . . [the] vehicle with a firearm and did not identify themselves." (Doc. 1 ¶ 17.) Mr. Woodard ran "for safety in fear of his life" when he saw a "a firearm pointed directly at him[.]" (*Id*. ¶ 18.) He claims that Defendants Wegner and Johnson "began chasing [him] and instilling fear for his life." (*Id*.) Defendants then "tackled [him] to the ground [and] slammed [his] head against a mountain of uneven ice while [his] hands were being restrained behind his back and applying substantial amount of pressure on his back for more than 30 seconds." (*Id*.) Mr. Woodard asserts that he "was taken to the hospital and subsequently spent several days" there. (*Id*.)

Beyond his Complaint, Mr. Woodard has provided no evidence to support his version of events. In contrast, the evidence Defendants have submitted, in the form of Body Worn Camera ("BWC") footage and police reports, shows that the force Defendants used when they arrested Mr. Woodard does not amount to a constitutional violation.

Defendant Johnson's police report from Mr. Woodard's February 16, 2022 arrest sets the stage and explains how law enforcement encountered Mr. Woodard in the first place. While Defendant Johnson was attempting to locate a suspect in a stolen vehicle case, "a white GMC Yukon without any license plates pulled up," driven by a person who

5

"shared facial features that were similar" to the suspect. (Doc. 48-1 at 10.) Defendant Johnson exited her unmarked police vehicle and, because she was in plainclothes, tucked in her shirt so that her "police badge on [her] belt was clearly visible in front of [her] handgun" which was still "holster[ed] on [her] belt." (*Id*.) Defendant Johnson then "knocked on the window [of the GMC Yukon] . . . made eye contact with the driver" and asked him for his vehicle's registration. (*Id.*) The driver, Mr. Woodard, then "put the vehicle in gear" and drove away from Defendant Johnson. (*Id.*) Mr. Woodard "drove up onto the sidewalks and drove through yards . . . before crashing into a fence." (*Id*.; Doc. 48-2 at 2.)

Defendant Wegner, who was observing the scene from his unmarked investigator vehicle, witnessed Mr. Woodard drive away from Defendant Johnson, "drive up onto the sidewalk," and crash his GMC Yukon into the fence. (Docs. 49-1 at 4; 49-2 at 0:51-1:06.[4]) Once the vehicle became stuck, "[Mr.] Woodard got out of the driver's seat and began running west[.]" (Docs. 48-1 at 10; 49-1 at 4-5; 49-2 at 0:51-1:06.) Defendants Wegner and Johnson both chased Mr. Woodard on foot. (Doc. 49-2 at 0:51-1:06.) Defendant Wegner's BWC footage shows that both Defendants yelled at Mr. Woodard to stop as they ran after him. (*Id*. at 1:03-06.) Defendant Wegner yelled again "police, stop!" but Mr. Woodard continued running. (*Id*. at 1:17-20.) Even after Defendant Wegner's third command to stop, Mr. Woodard did not comply. (*Id*. at 1:24-25.)

---

[4] For ease of reference, all references to time reflect the timestamp found in the bottom left corner of the video exhibit.

Defendant Wegner finally caught up to Mr. Woodard and as he reached out to apprehend him, both men fell to the ground. (*Id.* at 1:24-30.) Defendant Wegner's BWC footage shows that once Mr. Woodard was on the ground, Defendant Wegner ordered Mr. Woodard multiple times to put his hands behind his back while Mr. Woodard attempted to roll over on his side. (Doc. 49-2 at 1:34-3:32.) The video also shows that both Defendants Wegner and Johnson lost their handcuffs while pursuing Mr. Woodard and were not able to place Mr. Woodard in handcuffs right away. (Docs. 49-1 at 4; 49-2 at 2:00-04 (Officer Wegner called over the radio "Minneapolis code 3, I had a yard sale, my cuffs fell off"), 3:20 (Officer Johnson stated, "we had a f***ing yard sale with our cuffs"), 4:38 (Officer Wegner retrieved his handcuffs from the middle of the street).) Without handcuffs, Defendants Wegner and Johnson kept Mr. Woodard on the ground and used their body weight to apply pressure to his legs and back until other law enforcement officers arrived. (*Id*. at 2:00-3:37.) After a Minneapolis Police officer arrived and placed handcuffs on Mr. Woodard, Defendants Wegner and Johnson stopped applying pressure to his legs and back and stood up. (*Id*. at 3:37-50.) Law enforcement then transported Mr. Woodard to the hospital because his head was bleeding and he reported swallowing one gram of heroin. (Docs. 47-2 at 77, 78; 48-1 at 11; *see generally* 49-3.) BWC footage of Mr. Woodard's hospital visit shows that he was discharged later that same evening. (Doc. 48-4 at 00:00-13:30.)

Considering the totality of these circumstances from the perspective of the reasonable officer on the scene, the Court focuses on the information available to Defendants Wegner and Johnson as they pursued and arrested Mr. Woodard. *Graham*, 490

7

U.S. at 396. Here, all three *Graham* factors—the severity of Mr. Woodard's crime, the threat he posed to the safety of the officers and others, and his active flight from law enforcement—establish that Defendants' conduct during Mr. Woodard's arrest does not amount to a constitutional violation. Based on the evidence before it, the Court finds that Defendants Wegner and Johnson, in their individual capacities, are entitled to summary judgment on Mr. Woodard's Fourth Amendment excessive force claim.

## II. QUALIFIED IMMUNITY.

Defendants Wegner and Johnson additionally argue that even if there were a constitutional violation, they are entitled to qualified immunity. To survive a motion for summary judgment on qualified immunity grounds, Mr. Woodard "must assert a violation of a constitutional right[,] demonstrate that the alleged right is clearly established[,] [and] raise a genuine issue of fact as to whether [Defendants] would have known that [their] alleged conduct would have violated [Mr. Woodard's] clearly established right." *Brockington v. City of Sherwood, Ark.,* 503 F.3d 667, 672 (8th Cir. 2007) (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (cleaned up)).

In a qualified immunity analysis, the threshold question is whether the evidence Mr. Woodard presents establishes that Defendants' conduct violated a constitutional right. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). As discussed above, Mr. Woodard failed to establish any constitutional violation. Therefore, he cannot overcome a qualified immunity defense on summary judgment. Because the evidence presented does not establish any violation, this Court need not and will not proceed with the qualified

8

immunity analysis. *Brockington*, 503 F.3d at 672 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MR. WOODARD'S OFFICIAL CAPACITY CLAIMS.

**A. Mr. Woodard's official capacity claims against Defendants Wegner and Johnson are claims against the cities of Bloomington and Richfield.**

Although neither the City of Bloomington nor the City of Richfield is named as a defendant is Mr. Woodard's Complaint, Mr. Woodard has named Defendants Wegner and Johnson in both their individual and official capacities. Additionally, Mr. Woodard claims in his Complaint "that the City [f]ailed to train its uniformed Defendants in avoiding the miss-identification of plain clothes Defendants in the field and a large body of evidence from the City's own witnesses, establishes the City's deliberate indifference to the obvious need for specific training and protocols in this area." (Doc. 1 ¶ 34.)

"A § 1983 action brought against a government official in his or her official capacity is, in effect, a suit against the agency or entity that employs that person." *Nicoll v. Roy*, No. 11-cv-2065 (DWF/JSM), 2011 WL 5079335, at *3 (D. Minn. Oct. 4, 2011), *R. & R. adopted*, 2011 WL 5078962 (D. Minn. Oct. 25, 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which a Defendant is an agent.'") Thus, the Court finds that Mr. Woodard's official capacity claims against Defendants Wegner and Johnson are claims against the cities for which they work—Bloomington and Richfield.

9

**B.     Mr. Woodard has not established an underlying constitutional violation, and so neither the City of Bloomington nor the City of Richfield can be held liable under *Monell*.**

Having established that Mr. Woodard's official capacity claims against Defendants Wegner and Johnson are indeed claims against the cities of Bloomington and Richfield, the Court examines whether those municipalities can be held liable for Mr. Woodard's claims. Under § 1983, municipal defendants may not be held vicariously liable for the unconstitutional acts of employees. *See Monell,* 436 U.S. at 694. But the cities of Bloomington or Richfield may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. *See id.*; *see also Doe By & Through Doe v. Washington Cty.*, 150 F.3d 920, 922 (8th Cir. 1998).

To avoid summary judgment, Mr. Woodard must present evidence that an official policy or custom of either the City of Bloomington or the City of Richfield was the "moving force [behind] the constitutional violation." *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (1999) (citing *Monell,* 436 U.S. at 694); *see also Bd. of Comm'rs v. Brown,* 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement). In other words, the cities may be liable for a constitutional violation if the violation resulted from an "official municipal policy," an "official custom," or "a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell*, 436 U.S. at 691) (further citation omitted). But to hold either city liable under *Monell* there must be a constitutional violation for which Bloomington or Richfield can be held liable in the first place.

Because the Court recommends granting summary judgment for both individually named Defendants on Mr. Woodard's constitutional claims, neither the City of Bloomington nor the City of Richfield can be held liable under *Monell*. Therefore, the Court recommends that Mr. Woodard's official capacity claims be dismissed with prejudice.

### IV. MR. WOODARD'S STATE LAW TORT CLAIMS SHOULD BE DISMISSED.

In addition to his federal constitutional claims, Mr. Woodard also raises two state law tort claims for "assault and battery" and "intentional infliction of emotional distress." (Doc. 1 ¶¶ 30-32.) "Under 28 U.S.C. § 1367, in any civil action in which the district courts have original jurisdiction, they shall also have supplemental jurisdiction over all other claims so related to the claims in the original jurisdiction that they form part of the same case or controversy." *Gregoire v. Class,* 236 F.3d 413, 419 (8th Cir. 2000). But federal courts may decline to exercise supplemental jurisdiction over such a claim when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) ("A federal district court has discretion to decline jurisdiction if it has 'dismissed all claims over which it has original jurisdiction.'"). Indeed, the Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire*, 236 F.3d at 420 (quoting *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir. 1990)).

Because the Court recommends granting summary judgment for Defendants and dismissing all of Mr. Woodard's federal constitutional claims—claims over which the Federal District Court has original jurisdiction—the Court recommends declining to exercise supplemental jurisdiction over Mr. Woodard's state law tort claims, and dismissing those claims without prejudice. *See Ferguson v. Cnty. of Clearwater*, No. 23-cv-0546 (PJS/LIB), 2024 WL 1255505, at *6 (D. Minn. Mar. 25, 2024) (declining to exercise supplemental jurisdiction and dismissing state law claims without prejudice).

## V. MR. WOODARD'S REQUEST TO HIRE A MEDICAL EXPERT IS DENIED.

In his response to Defendants' Motion for Summary Judgment, Mr. Woodard requests that the Court "hire a medical expert [to determine] the amount of force and pressure necessary to cause such [a] laceration" to his head. (Doc. 71 at 3.) The Court construes Mr. Woodard's request as a motion to appoint expert witnesses under Federal Rule of Evidence 706.

Rule 706 allows a court to appoint an expert "to aid the [c]ourt, and not for the benefit of one of the parties." *Greene v. Lake,* No. 17-cv-3551 (NEB/ECW), 2018 WL 4590004, at *2 (D. Minn. Sept. 25, 2018) (quoting *Rueben v. United States*, No. 2:13-cv-33-DPM-JTK, 2014 WL 5460574, at *3 (E.D. Ark. Sept. 26, 2014) (cleaned up), *R. & R. adopted* (E.D. Ark. Oct. 27, 2014), *aff'd sub nom. Rueben v. Outlaw*, 614 F. App'x 861 (8th Cir. 2015).) The Eighth Circuit has held that under Rule 706 "the district court may order the United States, as a party, to advance the fees and expenses of lay and expert witnesses called by the court," but that "this discretionary power is to be exercised only

under compelling circumstances." *United States Marshals Service v. Means*, 741 F.2d 1053, 1059 (8th Cir. 1984).

The Court concludes that Mr. Woodard has failed to demonstrate compelling circumstances warranting the appointment of a medical expert. First, normally "indigent civil litigants are required to bear the costs of their own experts." *Greene* 2018 WL 4590004, at *2 (quoting *Vogel v. Turner*, No. 11-cv-0446 (PJS/JJG), 2013 WL 358874, at *11 (D. Minn. Jan. 8, 2013), *R. & R. adopted*, 2013 WL 359072 (D. Minn. Jan. 30, 2013)). Second, the Court's recommendation to grant summary judgment in Defendants' favor is based on the reasonableness of the officers' actions as supported by the record, not on any failure by Mr. Woodard to provide medical evidence related to his injury. *Accord Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. 2006). ("We also find it incongruous that the district court denied [Mr.] Spann's motion for an expert witness and then granted summary judgment in part based on [Mr.] Spann's failure to provide verifying medical evidence that the delay had detrimental effects.") Finally, Mr. Woodard has failed to show that his underlying claim—that Defendants Wegner and Johnson used unconstitutionally excessive force while arresting him—is so complex as to require a medical expert's testimony or report to assist the Court's understanding of the case. *See Daywitt v. Harpestead*, No. 20-cv-1743 (NEB/HB), 2022 WL 420787, at *4 (D. Minn. Feb. 11, 2022) (denying appointment of medical expert where issue not sufficiently complex). Therefore, Mr. Woodard's request for appointment of a medical expert is denied without prejudice.[5]

---

[5] Should Mr. Woodard's claim survive summary judgment, he is free to renew his motion for appointment of a medical expert.

## VI.     ORDER TO SHOW CAUSE AS TO UNKNOWN OFFICERS #1-30.

Finally, the Court turns to Mr. Woodard's excessive force claims against Unknown Officers #1-30. Mr. Woodard listed the Unknown Officers when he filed his complaint in August 2022. (Doc. 1 at 1.) However, to date, he has failed to either identify them or serve them with a complaint. Defendants do not address the Unknown Officers in their Motion for Summary Judgment.

"[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Larson v. Lake*, No. 17-cv-3551 (NEB/ECW), 2019 WL 5150832, at *19 (D. Minn. June 10, 2019) (quoting *Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)), *R. & R. adopted as modified sub nom. Larson v. Carlton Cnty. Jail*, No. 17-cv-3551 (NEB/ECW), 2019 WL 4187839 (D. Minn. Sept. 4, 2019), *aff'd*, 810 F. App'x 489 (8th Cir. 2020). But if after discovery has closed, a plaintiff still has not identified an unnamed defendant, dismissal is proper. *Id.* (citing *Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 753 (D. Minn. 1997)). The failure to name defendants also prevents their proper service and therefore claims against unnamed defendants must be dismissed under Federal Rule of Civil Procedure 4(m). *See Zimmerman v. Bellows*, 988 F. Supp. 2d 1026, 1033 (D. Minn. 2013).

Mr. Woodard had the opportunity to identify the Unknown Officers through the course of discovery, move to amend his complaint, and serve the identified defendants with the amended complaint. But nearly two years have gone by and Mr. Woodard has failed to do so. As a result, Mr. Woodard is ordered to show cause why the Unknown Officers #1-

30 should not be dismissed for failure to serve them according to Rule 4(m). *Zimmerman*, 988 F. Supp. 2d at 1033. Within 21 days of the date of this Order, Mr. Woodard is directed to file an affidavit, memorandum, or other documentation explaining why the Unknown Officers #1-30 should not be dismissed for failure to serve them according to Rule 4(m). If no response to this Order is filed within 21 days, this Court will recommend that Unknown Officers #1-30 be dismissed without prejudice for failure to serve them according to Rule 4(m).

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Defendants Chris Wegner and Amanda Johnson's Motion for Summary Judgment (Doc. 45) be **GRANTED**; and

2. Claims against Defendants Chris Wegner and Amanda Johnson in their individual and official capacities be **DISMISSED WITH PREJUDICE.**

## ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that:

1. Mr. Woodard's Request for Appointment of Medical Expert (Doc. 71) is **DENIED WITHOUT PREJUDICE**; and

2. Within 21 days after the date of this Order, Mr. Woodard must show cause, in writing, why Unknown Officers #1-30 should not be dismissed.

3. If Mr. Woodard does not respond within 21 days after this Order, the Court will issue a Report and Recommendation to the District Court recommending Unknown Officers #1-30 be dismissed without prejudice.

Date: May 21, 2024                              *s/Douglas L. Micko*
                                                DOUGLAS L. MICKO
                                                United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).